CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
October 31, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Antonio Gerrell Perkins, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:22-cv-00587 |
| ) | |
| Deputy Fix *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **MEMORANDUM OPINION**

Plaintiff Antonio Gerrell Perkins, a Virginia inmate proceeding *pro se*, filed this lawsuit, which asserts claims pursuant to 42 U.S.C. §1983 and supplemental claims pursuant to Virginia law. Perkins named the following defendants: Deputy Fix, Deputy Wade, Inv. Patterson, Inv. Young, Inv. McCullough, Tony McFaddin, Donald Schley, Josh Berry and Jared Moon (collectively "Defendants"). Defendants moved to dismiss most of the claims and moved for summary judgment on one particular claim as described below and filed an accompanying brief. (Dkts. 25 [hereinafter "Motion"], 26 [hereinafter "Memorandum in Support"].) Perkins filed an opposition to the Motion. (Dkt. 31.) Thus, the Motion is ripe for decision. For the reasons set forth below, the court will grant Defendants' Motion and dismiss this case.

## I. Background

Perkins organized his complaint by captioning his assertions into four groups he referred to as "claims," some of which contain multiple causes of action arising from distinct facts.[1] Counsel for Defendants separated the "claims" as asserted by Perkins into distinct subclaims to provide clarity in the Memorandum in Support. (Dkt. 26 at 1-3.). Perkins responded, and he does not object to Defendants' organization and characterization of the causes of action. The court, in light of its obligation to liberally construe *pro se* submissions, agrees that the following subclaims were asserted by Perkins in his complaint:

> Claim 1(a): On February 4, 2021, McCullough failed to permit Perkins to gather his belongings from his home when he served him with a protective order, which resulted in the mother of Perkins's children stealing his identity. Perkins claims he asked McCullough if he could take his wallet and cash with him but that his request was denied. He does not allege he informed McCullough that the mother might steal his property or his identity. The court construes this claim as asserting a violation of the Fourteenth Amendment's substantive due process clause.
>
> Claim 1(b): In February and March of 2021, McCullough failed to investigate Perkins's claims that the mother of Perkins's children stole his property.
>
> Claim 1(c): Unnamed deputies and investigators at an undisclosed time failed to investigate vague crimes committed against Perkins and instead threatened to arrest him for making a false report. Perkins does not specify which defendants he claims are liable for this conduct.
>
> Claim 1(d): All defendants conspired to falsely arrest Perkins and charged him with several felony offenses on different dates in April 2021 and September 2021 in hopes of getting him convicted and sent to prison even though they "knew the person giv[ing] them the story was lying." (Dkt. 1 at 4.)
>
> Claim 2: On April 27, 2021, Fix, the arresting deputy sheriff, did not arrange for Perkins to receive mental health treatment after Perkins said, "I should kill myself," while Fix was transporting Perkins to Rockbridge Regional Jail. (*Id.* at

---

[1] The court notes that many of the defendants are misjoined pursuant to Fed. R. Civ. P. 20, and that Perkins should have filed several separate actions to assert these unrelated causes of action against multiple defendants. The court will, however, waive this defect to efficiently resolve these claims in a single opinion.

2.) Perkins attempted suicide later that night. The court considers this to be a claim for deliberate indifference to a mental health condition, particularly Perkins's risk of suicide, in violation of the Fourteenth Amendment. Defendant Young is mentioned in this claim, but only as being told "something different" by Fix. (*Id.* at 4.) The court therefore does not interpret this claim to be asserted against Young.

Claim 3: Defendant McFaddin failed to investigate "serious problems" (*id.*) Perkins brought to his attention, instead only reading Perkins his rights. Perkins states he could not recall the date(s) this incident occurred.

Claim 4(a): Defendant Moon, in his role as prosecutor, withheld and fabricated evidence depriving Perkins of a fair trial.

Claim 4(b): Defendant Moon maliciously prosecuted Perkins.

Claim 4(c): Defendant Moon intentionally inflicted emotional distress upon Perkins by prosecuting him.

Claim 4(d): Defendant Moon negligently prosecuted Perkins.

## II.    Analysis of Defendants' Motion to Dismiss

### A. Standard of Review

The court now considers Defendants' arguments that certain claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] A motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not

---

[2] Defendants' Motion is styled as a Motion for Summary Judgment, but the Memorandum in Support asserts that dismissal of most of Perkins's claims is appropriate under the motion to dismiss standards.

entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (cleaned up). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

Perkins opposed Defendants' Motion (Dkt. 31.), but his response addressed only Claim 2 and Claim 1(b). Perkins did not contest any of the arguments made by Defendants in relation to the other claims, and thus appears to concede that these claims should be dismissed.

### B. Defendants to whom no Particular Conduct is Attributed will be Dismissed

Perkins in his Complaint failed to allege any particular conduct or inaction that would support a claim to relief against Defendants Wade, Patterson, Young, Schley, and Berry other

than to group them together in making the false arrest claim against "all defendants."³ Perkins's opposition to the Motion also did not provide any further detail as to the personal acts of these Defendants.

To state a claim under §1983, a plaintiff must allege that the defendant acted personally in the deprivation of the plaintiff's rights. *Iqbal*, 556 U.S. at 676 (providing that a plaintiff in a § 1983 action must plead that each defendant, through his own individual actions, violated the Constitution). Liability may be imposed based only on an official's own conduct. *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014). Here, Perkins did not specify any particular conduct of each defendant such that the court could conclude that liability could be established. Accordingly, the court will dismiss Defendants Wade, Patterson, Young, Schley, and Berry..

**C. Perkins's Vague and Unspecified Claims will be Dismissed**

Similarly, a plaintiff must identify the particular acts or inactions he claims violated his rights with specificity so that the Defendants may respond to the allegations. To state a claim for relief, a plaintiff must plead more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678 (2009). A complaint that offers only labels or conclusions or a formulaic recitation of the elements of a cause of action is insufficient. *Id.* The claim must be plausible on its face. *Id.* The plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* A plaintiff must plead more than a sheer possibility. *Id.* Naked assertions and legal

---

³ As stated above, Perkins mentions Young in Claim 2 but the allegation that Young was told "something different" by Fix does not support a claim against Young.

conclusions devoid of further factual enhancement are insufficient to meet the pleading standard in Fed. R. Civ. P. 8. *Id.* at 678-79. As to Claims 1(c) and 3, Perkins failed to identify any specific facts supporting these claims, and therefore they do not state plausible claims of liability.

As to Claim 1(d), to state a claim for false arrest under § 1983, a plaintiff must demonstrate that he was arrested without probable cause. *Sowers v. City of Charlotte*, 659 F. App'x 738, 739 (4th Cir. 2016). Here, Claim 1(d) alleges only that all defendants conspired to falsely arrest Perkins "even when they knew the person giv[ing] them the story was lying." (Dkt. 1 at 3-4.) Perkins does not identify which defendant(s) sought the allegedly erroneous charges, which defendant(s) took Perkins into custody, or which defendant(s) communicated with the allegedly lying party. Perkins does not give any specific dates these incidents occurred, nor does he state what he was charged with. Perkins does not otherwise plead what false factual basis the defendants relied on when seeking charges against him and does not explain what this unnamed witness supposedly lied about or how such a lie would have invalidated any arrest by any defendant(s). Lacking any such detail, the court cannot reasonably infer that whichever defendant(s) arrested Perkins did so absent probable cause. Accordingly, Claim 1(d) alleging a false arrest fails to state a claim upon which relief could be granted.

### D. Perkins's Claims alleging Failures to Investigate should be Dismissed

In Claim 1(b), Perkins alleges that McCullough failed to investigate allegations that the mother of his children stole his property or identity when Perkins's wallet was left in his

residence following McCullough's service of an emergency protective order on Perkins.[4] (*Id.* at 3.)  Claim 1(c) accuses unnamed deputies and investigators from the Rockbridge County Sheriff's Office of failing to investigate "crimes being committed against [Perkins] and crimes that have took place and needed to be looked into." (*Id.*)  Claim 3 asserts that Perkins "went to [McFaddin] with serious problems that needed to be investigated," but that McFaddin "didn't care [and] never looked into [Perkins's] situation." (*Id.* at 4.)

None of these allegations state a claim upon which relief could be granted.  Purported victims of crimes do not have a constitutional right to have the crimes investigated or to dictate how they are investigated.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also In re Pizzuto*, 475 F. App'x 468 (4th Cir. 2012) (denying writ of mandamus on petitioner's request to compel investigation and prosecution as petitioner had no clear right to such relief).

Here, Claims 1(b), 1(c), and 3 are all based on alleged deficiencies in the investigation of crimes against Perkins by employees of the Rockbridge County Sheriff's Office.  Even assuming Perkins's allegations are true, Perkins has no constitutional right to an investigation of crimes he believes were committed against him or to the prosecution of the alleged perpetrators of those crimes.  Accordingly, Perkins has failed to state a claim upon which relief could be granted concerning Claims 1(b), 1(c), and 3.

---

[4] Perkins asserts in his opposition to the Motion that this failure to charge the alleged perpetrator is "not equal protection of the law." (Dkt. 31 at 2.)  Perkins did not assert any equal protection claim in the complaint, and he cannot amend his complaint through a mere reference in a subsequent pleading.  *Stahlman v. United States*, 995 F. Supp.2d 446, 453 (D. Md. 2014).  He has not requested leave to amend.  He also failed to assert that he is a member of any protected class that would support an equal protection claim, so any equal protection claim would also fail to state a claim upon which relief could be granted.

### E. Perkins's Claims against Prosecutor Moon will be Dismissed on the basis of Prosecutorial Immunity

Perkins's claims against Moon are vague and devoid of facts. Further elaboration would not save these claims, however, because Moon is entitled to absolute prosecutorial immunity for the federal claims brought against him pursuant to § 1983, namely that Moon withheld unspecified exculpatory evidence, fabricated evidence, and maliciously prosecuted him as asserted in Claims 4(a) and 4(b). Prosecutors are entitled to immunity for conduct "in initiating and in presenting the State's case . . . ." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996). "[A] state prosecuting attorney is absolutely immune from liability for damages for conspiring with police officers to present false testimony and for withholding exculpatory evidence prior to trial, as those actions are 'intimately associated with the judicial process.'" *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009) (quoting *Carter v. Burch*, 34 F.3d 257, 262–63 (4th Cir. 1994)).

To the extent Perkins alleged state law claims arising from Moon's conduct as he mentions "negligent prosecution", Moon is also entitled to prosecutorial immunity under Virginia state law. *Andrews v. Ring*, 266 Va. 311, 320–21, 585 S.E.2d 780, 784 (2003) ("The absolute immunity of prosecutors from civil liability for acts within the scope of their duties and intimately associated with the judicial phase of the criminal process is derivative of judicial immunity."). Further, "negligent prosecution" is not a cause of action in Virginia upon which relief could be granted. *Caldwell v. Green*, 451 F. Supp. 2d 811, 820–21 (W.D. Va. 2006). A prosecutor's immunity also extends to intentional infliction of emotional distress claims under Virginia law. *Weiner v. Albemarle Cty.*, 2018 WL 542979, at *8 (W.D. Va. Jan. 4, 2018). Accordingly, the court will dismiss Claims 4(a)-(d) asserted against Moon.

### F. Perkins's Claims arising from McCullough's Refusal to Permit Retrieval of Perkins's Wallet will be Dismissed

Any substantive due process claims against McCullough for failure to protect Perkins's belongings or identity should be dismissed for failure to state a claim as McCullough is not liable for the theft of Perkins's property at his purported residence by a third party. (Claim 1(a).) Perkins alleges that on February 4, 2021, McCullough served him with a protective order at his apartment. (Dkt. 1 at 3.) Perkins does not claim he was arrested. Perkins claims he asked McCullough if he could retrieve his belongings from the apartment, but McCullough said no.[5] (*Id.*) Perkins alleges he then asked if McCullough could retrieve his wallet and cash for him, but this request was denied. (*Id.*) Perkins now claims that his wallet was in possession of his children's mother, the petitioner under the issued protective order. (*Id.*) There are no allegations that McCullough knew this at the time or that Perkins told him this. Perkins claims that she was then able to steal his identity. (*Id.*)

McCullough is not liable to Perkins for any theft of Perkins's property by a third-party when there are no allegations that McCullough was in control of the third-party and had no reason to believe the third-party party would steal Perkins's property or identity. The Due Process clause does not impose upon state actors a duty to protect individuals from the criminal acts of a third party. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989). Two exceptions to this general rule can support liability when a special relationship exists or where the state creates the danger. *Turner v. Thomas*, 930 F.3d 640, 645 (4th Cir. 2019). Perkins has not alleged any facts indicating that a special relationship exists,

---

[5] Presumably, the protective order forbade Perkins from entering the apartment and/or from having contact with the petitioner.

such as a custodial relationship. Likewise, he has not alleged any facts indicating that the state created the danger. To establish § 1983 liability based on the state-created danger theory, "a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). Whatever "affirmative acts" a plaintiff relies on must have a direct causal connection to the harm claimed. *Graves v. Lioi*, 930 F.3d 307, 323 (4th Cir. 2019). A plaintiff must allege facts sufficient to show the nexus necessary for any of the alleged conduct to be considered "affirmative acts," because courts should not stretch that concept "beyond the context of immediate interactions between the state actor and the plaintiff." *Rosa*, 795 F.3d at 441 (cleaned up).

Here, there are no facts linking McCullough's only alleged affirmative act of serving a protective order with the theft. "The downstream, but-for connection alleged here simply stretches the 'affirmative acts' concept too far." *Id.* at 442. McCullough certainly could not have permitted Perkins to enter the residence on his own to retrieve the wallet if Perkins was barred from the residence or barred from being in the presence of the protected party who allegedly had possession of the wallet. Perkins does not allege that McCullough had the permission of the protected party or anyone else with apparent authority to enter the apartment to retrieve the wallet or some other means to legally enter the apartment. Based upon the above, the court finds Perkins has failed to state a Due Process claim of failure to protect his property from being stolen by a third party.

### III. Analysis of Defendants' Motion for Summary Judgment

### A. Standard of Review

Defendants also moved for summary judgment as to Claim 2, which Perkins asserted against Defendant Fix. Motions for summary judgment are evaluated under the standards established in Federal Rule of Civil Procedure 56. Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an

'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (cleaned up) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the court must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

However, the nonmoving party cannot create a genuine issue through mere speculation or the building of one inference upon another. *See, e.g., Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015). Even though the nonmoving party is entitled to all favorable inferences to be drawn from the evidence, such inferences must be based on facts; mere hopes or suspicions are not enough. *Via v. Richmond*, 543 F. Supp. 382, 385 (E.D. Va. 1982).

**B. Facts Relevant to Defendants' Motion for Summary Judgment**

Defendant Fix submitted a Declaration (Dkt. 26-1), which establishes the following facts. Fix was a deputy sheriff in Rockbridge County, Virginia. (*Id.* ¶ 1.) In the early morning hours of April 28, 2021, dispatch received a 911 call stating Perkins had entered the residence of a woman, identified by the initials L.S. (*Id.* ¶ 2.) There was an active protective order in place prohibiting Perkins from having contact of any kind with L.S. or L.S.'s children. (*Id.*) The caller stated that Perkins had snuck into L.S.'s residence after the caller had gone outside to smoke and locked the caller out of the apartment. (*Id.*) Based on the information received from the caller, a search warrant was obtained to search the residence in daylight hours. (*Id.*) Units set up a perimeter around the apartment for the remainder of the night to observe whether Perkins would leave the residence prior to execution of the search warrant. (*Id.* ¶ 3.) At the beginning of his shift that morning, Fix responded to the residence of L.S. to assist in the execution of the search warrant. (*Id.*) At approximately 7:45 a.m., another employee of the Rockbridge Sheriff's Office obtained consent from L.S. to search the residence for Perkins. (*Id.*) Fix entered the residence and held cover for other law enforcement personnel as they proceeded down the residence hallway to search for Perkins. (*Id.*) Perkins was eventually found hiding in the residence and was handcuffed and placed in the back of Fix's patrol car. (*Id.*)

Fix proceeded to transport Perkins to the Rockbridge Regional Jail for processing for felony violations of a protective order for entering the residence of L.S. (*Id.* ¶ 4.) The drive from the residence of L.S. to the jail takes approximately five minutes. (*Id.*) On the way to the jail, Perkins was belligerent and was yelling and cursing. (*Id.*) He threatened to file a


lawsuit against the Sheriff's Office and stated that the Sheriff's Office was "fucking with the wrong one." (*Id.*) One of the last comments Perkins made to Fix was that he might as well just kill himself so that he did not have to deal with the charges for violating the protective order. (*Id.*) This was the only comment Fix heard Perkins make referencing suicide. (*Id.*) Fix attested that he did not believe Perkins's comment was a sincere expression of any intent to commit suicide. (*Id.*)

Upon arriving to the jail at approximately 8:00 a.m., Perkins was secured first by handcuffs to a bench in the magistrate's corridor while Fix and another investigator began the process of obtaining charges against Perkins. (*Id.* ¶ 5.) Fix uncuffed Perkins and escorted him to the sallyport adjacent to the magistrate's corridor so that another inmate in the magistrate's corridor holding cell could be moved into the booking area of the jail. (*Id.*) While Perkins was in the sallyport, he again became belligerent and physically aggressive, requiring him to be handcuffed once more. (*Id.*) During this incident, approximately nine members of the jail staff responded to the sallyport. (*Id.*) After Perkins was handcuffed, Fix escorted him back into the magistrate's corridor, assisted by jail staff. (*Id.*) After the holding cell was ready for use, Fix and jail staff escorted Perkins into the holding cell. (*Id.*) After Perkins was secured in the holding cell with the door closed, Fix informed jail staff of the comment Perkins made referencing suicide while being transported to the jail. (*Id.*)

Approximately five members of the jail staff were present when Fix communicated Perkins's earlier comment. (*Id.*) Perkins would not have been able to hear Fix communicate the comment to jail staff. (*Id.*) Once Perkins was secured in the holding cell, he calmed down enough for Fix and the other investigator to continue the process of obtaining the warrants

on Perkins which took several hours.  (*Id.* ¶ 6.)  After the warrants were obtained and served on Perkins and a commitment order was issued for Perkins, Fix transferred custody of Perkins to the jail correctional officers at approximately 3:00 p.m.  (*Id.*)  Perkins did not make any other comments referencing suicide to Fix, and Fix did not observe Perkins engaging in any self-harmful behavior at any relevant time.  (*Id.*)  After transferring custody of Perkins to the jail correctional officers, Fix had no further interactions with Perkins.  (*Id.*)

At the time Fix transferred custody of Perkins to the jail, Perkins was calm.  (*Id.*)  After transferring custody, Fix retained no control over the mental health treatment Perkins accessed or received.  (*Id.* ¶ 7.)  Fix had no control over Rockbridge Regional Jail's medical or mental health staff.  (*Id.*)  At no point did Perkins ask Fix to seek mental health treatment for him.  (*Id.*)  Fix believed that the jail had a protocol in place for processing incoming inmates who expressed suicidal ideation.  (*Id.*)  Fix believed that incoming inmates would be separated from general population and kept in the front part of the jail for closer monitoring.  (*Id.*)

According to Perkins's Complaint, he attempted suicide later that night.  (Dkt. 1 at 4.)  Defendants do not dispute Perkins's suicide attempt.

Perkins, in his opposition to the Motion, does not dispute any of the facts established in Fix's Declaration with any of his own evidence or any sworn statement, such as an affidavit or declaration.  He simply states that Fix "did not care" and "didn't follow protocol," although he does not specify any particular protocol allegedly violated. (Dkt. 31 at 1.)  Perkins surmises "who's to say if Deputy Fix told the jail anything," (*Id.* at 2.) but he does not contradict Fix's sworn statement that he did, in fact, notify the jail.  Perkins's complaint was verified, so the court also reviewed the allegations in the complaint to determine if they create any genuine

issue of material fact precluding summary judgment. As was the case with his opposition to the Motion, Perkins's allegations in the complaint do not contradict the facts set forth in Fix's Declaration either; he just reaches a different legal conclusion regarding the established facts, contending that the facts support liability.

### C. Analysis of Defendants' Motion for Summary Judgment

The Fourteenth Amendment's due process clause protects pretrial detainees from violations of their constitutional rights by those acting under color of law including deliberate indifference to their serious medical needs. *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) (citing *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978)). An arrestee is considered a pretrial detainee once the arrest is complete, regardless of whether the arrestee has been formally charged. *See Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (applying pretrial detainee status and the Fourteenth Amendment constitutional standard in an excessive force case where arrestee had been seized and placed in the back of patrol vehicle and was being transported to jail when alleged constitutional violation occurred). The deliberate indifference standard applies to serious psychological conditions as well. *Gordon*, 971 F.2d at 1094 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Mere negligence does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that

the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). If an arrestee threatens suicide, an arresting officer is not deliberately indifferent to an arrestee's risk of suicide if the arresting officer notifies jail staff that the arrestee is a potential suicide risk. *Gordon*, 971 F.2d at 1094–95.

The facts of this case closely mirror those in the *Gordon* case, in which the wife of pretrial detainee sued police officers after her husband committed suicide in jail following his arrest. *Id.* at 1089–90. Officers responded after the wife called 9-1-1 advising that her drunk husband had a knife pressed to his chest and was threatening to kill himself. Because of the circumstances surrounding the arrest, the arresting officers advised the jail that the detainee might be suicidal. *Id.* The Fourth Circuit upheld the grant of summary judgment to the arresting officers, holding that their conduct was not deliberately indifferent to the detainee's suicidal tendencies in violation of § 1983. *Id.* at 1094–95. The Fourth Circuit held that the arresting officers' notification to the jail sufficiently established that the officers were not deliberately indifferent. *Id.* at 1097. The facts in *Gordon* mirror those here and direct that Fix should be granted summary judgment.

Although Perkins seemingly complains about the gap in time between when first arrived at the jail and the time Fix advised the jail of Perkins's comment, Fix's declaration establishes the reasonable factual basis for the delay, and Perkins has offered no facts to support an inference that the delay was intentional or any law indicating that a delayed notification would make the claim actionable. Additionally, the suicide attempt occurred well after Fix's notification. Even were the slight delay in notification itself sufficient to support a

claim, the court would find that Fix is entitled to qualified immunity regarding any such delay. Fix would not have reasonably known under clearly established law that a delay in advising the jail would violate Perkins's Constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

For these reasons, the court finds that no reasonable jury could find Deputy Fix liable for deliberate indifference to Perkins's mental health needs upon these facts and will grant Defendants' motion for summary judgment as to Claim 2.

### IV. Conclusion

For the reasons stated above, the court **GRANTS** Defendants' Motion (Dkt. 25.) in full. The court **DISMISSES** Perkins's claims against Defendants other than Fix and **GRANTS** Defendant Fix summary judgment. This Memorandum Opinion therefore resolves all claims asserted by Perkins. An appropriate Order will follow. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and accompanying Order to Plaintiff Perkins.

**ENTERED** this 31st day of October 2024.

/s/ *Jasmine H. Yoon*
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE